## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|                 Plaintiff, | ) |
| v. | ) |
| | ) |
| CARLOS BELTRAN-AGUILAR, | )      Case No. 08-20106-01 KHV |
| | ) |
|                 Defendant. | ) |

_____)

## MEMORANDUM AND ORDER

On May 11, 2009, a jury found defendant guilty of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 18 U.S.C. § 2 and 21 U.S.C. § 846 (Count 1), possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 18 U.S.C. § 2 (Count 2) and making a residence available for storing, using and distributing methamphetamine in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2 (Count 3). This matter is before the Court on defendant's <u>Motion For Judgment Of Acquittal, Or In The Alternative A New Trial</u> (Doc. # 105) filed May 18, 2009. For reasons stated below, defendant's motion is overruled.

### Standards For Motions For Judgments of Acquittal

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., the Court cannot weigh the evidence or consider the credibility of witnesses. See <u>Burks v. United States</u>, 437 U.S. 1, 16 (1978). Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." <u>United States v. White</u>, 673 F.2d 299,

301 (10th Cir. 1982).  The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences which could be drawn therefrom, in the light most favorable to the government.  United States v. Notch, 939 F.2d 895, 898 (10th Cir. 1991).  Acquittal is proper only if the evidence implicating defendant is nonexistent or is "so meager that no reasonable jury could find guilt beyond a reasonable doubt."  White, 673 F.2d at 301.

### Standards For Motions For New Trial

Rule 33, Fed. R. Crim. P., provides that a motion for a new trial may be granted "if required in the interests of justice."  A motion for new trial under Rule 33 is not regarded with favor and is granted only with great caution.  See United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court.  See id.

### Factual Background

The following is a brief summary of the evidence presented at trial:

On August 25, 2008, undercover police officer Jesse Valdez was participating in a Drug Enforcement Administration ("DEA") investigation in Kansas City, Kansas.  Valdez arranged to purchase four ounces of methamphetamine from Jose Viera (a.k.a. "Brian").  At 4:00 p.m., DEA established surveillance at Viera's residence at 1125 Metropolitan in Kansas City, Kansas.  At 5:44 p.m., a black 2002 Honda Accord arrived at the residence.  An Hispanic male got out of the Honda and entered the house.  At 6:28 p.m., the same Hispanic male returned to the Honda.  At 6:40 p.m., Viera telephoned Valdez and said that he would be at the meeting location in five minutes.

Shortly thereafter, Viera arrived at a movie theater in Merriam in a white Ford Explorer with an Hispanic male who identified himself as "Alfred."  Alfred got into Valdez's vehicle while Viera

drove around and parked next to Valdez's vehicle.  Alfred removed from his pants a clear bag which contained four ounces of methamphetamine.  He handed it to Valdez, who gave him $3,200.  Alfred and Viera then left in the Explorer, and DEA agents followed the Explorer back to Viera's residence. Alfred and Viera went into the residence, where the Honda was again parked.  Officers then observed an Hispanic male leave the residence and depart in the Honda.  DEA agents followed the Honda to 1118 North 50th Street in Kansas City, Kansas and continued to monitor that residence.

On August 27, 2008, at approximately 12:30 p.m., officers saw the Honda parked in front of the residence at 1118 North 50th Street.  A 1999 black Jeep Cherokee arrived at the residence. Carlos Beltran-Aguilar and Jose Torres-Garcia got out of the Jeep and approached the front door. Beltran-Aguilar unlocked the front door and entered the residence with Torres-Garcia.  At approximately 1:30 p.m., Beltran-Aguilar left the residence in the Jeep, drove to a store, purchased a large box of Gain laundry detergent and returned to the residence at 1118 North 50th Street.  At approximately 1:55 p.m., the Jeep and the Honda traveled in tandem to a gas station at 47th and State Avenue.  Special Agent Ditter saw Beltran-Aguilar and Jose Torres-Garcia in the Honda and two other Hispanic males in the Jeep.  Ditter and other officers followed the Jeep and the Honda as they traveled in tandem on I-635 and then to I-29 northbound from Kansas City.  Sheriff deputies stopped the Jeep.  A narcotics canine positively indicated on the vehicle, but officers did not find any narcotics in the vehicle.  The Honda continued traveling northbound.

At approximately 3:15 p.m., Missouri Highway Patrol Trooper William Lashmet stopped the Honda for speeding in a work zone.[1]  Trooper Lashmet asked the driver, Beltran-Aguilar, for his

---

[1]      Shortly before the stop, Trooper Lashmet learned that DEA was following the Honda and was requesting assistance to stop the vehicle which was believed to be carrying a large quantity of methamphetamine.

driver's license, registration and proof of insurance. Beltran-Aguilar handed Trooper Lashmet a Missouri license and vehicle registration. Torres-Garcia gave Trooper Lashmet a driver's license bearing the name Juan Colorado. While obtaining the documents Trooper Lashmet noticed several air fresheners throughout the vehicle and two Boost Mobile pre-paid cellular telephones. Beltran-Aguilar and Torres-Garcia were not the registered owners of the vehicle, and they told Trooper Lashmet that they did not know who owned it.

Trooper Lashmet used a Spanish phrase guide to converse with Beltran-Aguilar, who said that they were traveling to Omaha.[2] Beltran-Aguilar gave Lashmet permission to search the vehicle. Officers performed a pat-down of Torres-Garcia and found over $2,000.00 in U.S. currency in his pants pocket. Both Beltran-Aguilar and Torres-Garcia had $2.00 bills in their possession. The officers knew that drug traffickers carry $2.00 bills for good luck when they transport narcotics. Trooper Lashmet found a large box of Gain laundry detergent in the trunk. He opened the box and found methamphetamine packaged in two one-pound bundles. Officers arrested Beltran-Aguilar and Torres-Garcia and transported them to jail.

At the jail, Special Agent Ditter, who is fluent in Spanish, spoke to Beltran-Aguilar. Beltran-Aguilar told him that for about the last month, he had resided at 1118 North 50th Street in Kansas City, Kansas. Beltran-Aguilar declined to answer further questions without an attorney. Special Agent Ditter then interviewed Torres-Garcia, who initially provided the false name of Juan Colorado. Torres-Garcia said that he resided with Beltran-Aguilar at 1118 North 50th Street.

Special Agent Ditter asked Torres-Garcia and Beltran-Aguilar for consent to search the residence at 1118 North 50th Street. Beltran-Aguilar gave officers the key to the residence. Officers

---

[2]     When Trooper Lashmet asked who was traveling with Beltran-Aguilar, Beltran-Aguilar looked at Torres-Garcia' license before he replied "Juan."

searched the house, and in the kitchen they found an exacto knife with detergent crumbs, a brown plastic grocery bag containing loose laundry detergent, a digital scale and green tinted cellophane like that used to wrap the methamphetamine.  They also found dimethyl sulfone, a common cutting agent for methamphetamine, in a kitchen cabinet.  During the search officers also found a drug ledger, Western Union wire transfer receipts and two bundles of cellophane with U.S. currency totaling $18,000.

Testimony of Jose Medina

Jose Medina testified pursuant to proposed plea agreement.  He testified that he met Viera in the summer of 2006 through a friend he knew as Jose.  Medina purchased methamphetamine from Viera and Jose many times over the course of many months, and Viera bought marijuana from Medina.  In September of 2007, Jose left.  For several months after that, Medina purchased methamphetamine from Viera in quantities ranging from a quarter pound a month to a whole pound. Viera often brought his girlfriend, Perla Flores (whom Medina knew only as Carla) to the drug transactions to translate.  Sometime in late 2007, Medina complained to Viera that he was supplying poor quality methamphetamine.  Viera told Medina that he was working on getting a new source.

In late December of 2007, Viera arranged to buy 20 pounds of marijuana from Medina. When Medina delivered the marijuana, Viera left to get $8,000 in cash to pay for the marijuana but he never returned.  Viera would not answer Medina's phone calls, so a few days later, Medina contacted Perla Flores.  She told Medina that police had stopped Viera with the marijuana.  In late February or early March of 2008, Medina met with Viera and Jose Torres-Garcia.  Viera told Medina that Torres-Garcia was his new supplier and that he had good product.  Medina told him that he just wanted his money back.  Medina did not have any further dealing with Viera.

Testimony of Perla Flores

Perla Flores testified pursuant to a plea agreement.  She met Viera in 2006 and became his girlfriend.  In December of 2007, they moved into a house at 1125 Metropolitan in Kansas City, Kansas.  At the time, Viera was selling methamphetamine which he purchased from Jose Miguel.  In December of 2007, however, Miguel left, and Viera bought drugs from "Oscar" for a few weeks (until police arrested Oscar).  At that point, Viera started buying drugs from Jose Antonia Beltran-Salazar, a.k.a., "Tony."

In April of 2008, Tony left and Viera went to Mexico on a "business trip" to obtain drugs.  At one point, Viera called Flores and told her than he and some companions had been arrested while trying to cross back into the United States.  In July of 2008, Viera returned from Mexico with three men (including defendant) whom Flores knew as Carlos, Lewis and Roberto.  They brought four to six pounds of methamphetamine and stored it in the basement of the house at 1125 Metropolitan.  Defendant, Lewis and Roberto stayed at the house for about two weeks.  During that time, Flores saw defendant helping to "cut" the methamphetamine in the kitchen.

**Analysis**

**I.     Motion For Judgment of Acquittal**

Defendant argues that he is entitled to a judgment of acquittal because the evidence was insufficient for a reasonable jury to find that he committed every element of the three charged crimes beyond a reasonable doubt.

A.      Conspiracy To Distribute Methamphetamine (Count 1)

Defendant argues that the evidence was insufficient for a reasonable jury to find that he conspired to distribute narcotics, but he does not specially address any of the elements of conspiracy.

-6-

To convict on § 846 conspiracy, government must prove (1) two or more persons agreed to violate the law; (2) defendant knew the essential objectives of the conspiracy; (3) defendant knowingly and voluntarily participated in the conspiracy; and (4) the alleged coconspirators were interdependent. United States v. Yehling, 456 F.3d 1236, 1240 (10th Cir. 2006). Defendant asserts that although he was "in the company" of individuals linked to the conspiracy, he conducted himself differently than those individuals – for example, he entered the country legally and used his own name. Defendant also argues that the government did not "forensically link" him to the drugs or drug money. Defendant argues that the case against him was "largely circumstantial," and that the evidence does not support a finding that he intended to engage in the conspiracy. Defendant's Motion (Doc. #105) at 5-6. The Court disagrees. See United States v. Evans, 970 F.2d 663, 668 (10th Cir. 1992) (government may prove elements of crime by direct or circumstantial evidence).

As noted, the Court must consider the totality of the evidence when considering the sufficiency of the evidence. United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (rather than examining evidence in "bits and pieces," court evaluates sufficiency of evidence by considering collective inferences to be drawn from evidence as whole). The jury heard ample evidence that Viera, Flores, Beltran-Salazar, Torres-Garcia and Beltran-Aguilar and others conspired to distribute methamphetamine. Defendant obtained the detergent container used to conceal two pounds of methamphetamine; lived in the residence where methamphetamine was stored, concealed and distributed; and assisted in preparing the methamphetamine for sale. At the time of his arrest, defendant was transporting two pounds of methamphetamine to a Nebraska distributor. The direct and circumstantial evidence was more than sufficient to establish the elements of conspiracy.

B.      Possession Of Methamphetamine With Intent To Distribute (Count 2)

Defendant argues that he is entitled to a judgment of acquittal on the possession charge because the evidence was insufficient for a jury to find that he possessed methamphetamine. Defendant argues that the only evidence which linked him to the methamphetamine in the trunk was that (1) he purchased Gain laundry detergent and (2) he was driving the car which contained the Gain detergent box with two pounds of methamphetamine.[3]  As the government points out, however, the jury heard evidence that defendant possessed other methamphetamine with intent to distribute it. Flores testified that defendant cut and packaged methamphetamine.  In the residence where defendant was staying on the day of his arrest, officers found numerous items used to package the methamphetamine.

Defendant also points to the lack of forensic evidence linking him to the methamphetamine. Government witnesses explained why fingerprint and DNA evidence often is not obtained in similar circumstances.  Further, defense counsel ably cross-examined witnesses on this issue.  The jury could reasonably choose to accept the government's rationale for the absence of such evidence.  Taken as a whole, the evidence was more than sufficient for a reasonable jury to find beyond a reasonable doubt that defendant possessed methamphetamine with the intent to distribute.

C.      Making A Residence Available For Storing, Using And Distributing Methamphetamine (Count 3)

Defendant argues that the evidence does not support a finding that he maintained a residence for the purpose of distributing drugs.  He asserts that his possession of a key to 1118 North 50th Street is the only evidence of this crime.  As the government points out, however, defendant told

_____

[3]      Defendant points out that he appeared calm when law enforcement stopped the car and that he agreed to a search of the car.

Special Agent Ditter that he had lived at 1118 North 50th Street for the month before his arrest.  In plain view in the common areas of that residence, officers found items used to process and package methamphetamine.[4]   Further, Flores testified that she saw defendant handle and process methamphetamine.  Examining the evidence in a light most favorable to the government, the Court finds that a rational jury could find the elements of Count 3 beyond a reasonable doubt.

For the reasons set forth above, the Court overrules defendant's motion for judgment of acquittal.

## II.    Motion For New Trial

Defendant argues that he is entitled to a new trial because the Court erred in admitting hearsay evidence concerning events outside the scope of the charged conspiracy.  Specifically, defendant contends that the Court erred in admitting testimony by Jose Medina, as follows:

> Mr. Medina testified that he engaged in a series of drug purchases of methamphetamine from Mr. Viera beginning in mid-October 2007 and concluding on December 22, 2007.  Mr. Medina testified that when he made the purchases, Mr. Viera was working with a particular supplier in 2007 that was, according to Mr. Viera, different than the one he was using during the pendency of the present indictment.  In fact, Mr. Medina testified that Viera was seen in the presence of his new supplier (a man identified as codefendant Jose Torres Garcia) in February or March 2008.

Defendant's Motion (Doc. #15) at 7.  Defendant objected to admission of this testimony.  The government responded that Medina's testimony established how the charged conspiracy began when Medina was introduced to the new supplier.  The Court overruled the objection.

Defendant argues that Viera's drug sales to Medina all occurred during 2007 – before the conspiracy charged from January 1, 2008 to September 24, 2008 – and thus related to a conspiracy

---

[4]      The items included an exacto  knife, a digital scale, green tinted cellophane and dimethyl sulfone (a cutting agent for methamphetamine).

separate from the one charged.[5]  The government correctly points out that the most of Medina's testimony related to events which he witnessed or participated in, and not out-of-court statements. The government points out that Viera's drug trafficking relationship with Medina immediately preceded the charged conspiracy, and that Viera's prior drug trafficking relationship with Medina established the basis for Viera's identification of Torres-Garcia as the new source of methamphetamine.

The Court agrees that development of such facts was helpful to a full and fair presentation of the case.  See United States v. Kimball, 73 F.3d 269, 272 (1995); 981 F.2d 1123 (10th Cir. 1992) (if necessary to establish circumstances and context of crimes alleged, testimony that contains references to other crimes or wrongs is properly admitted as res gestae).  When testimony is "helpful in providing the jury with an understanding of how they knew [the defendant] and how it came about that they were trusted brokers or other participants" in his dealings, it is properly admitted.  U.S. v. McMillon, 14 F.3d 948, 955 (4th Cir. 1994).  Such testimony was helpful for the jury to understand how the illegal relationship between the participants in the crimes developed.

The government acknowledges that it offered for the truth of the matter asserted an out-of-court statement which Viera made to Medina in February of 2008.  Specifically, Medina testified that Viera told him that he had found a better methamphetamine supplier and identified Torres-Garcia as the source.  The government argues that Viera's statement was admissible as a co-conspirator statement under Fed. R. Evid. 801(d)(2)(E).

Co-conspirator statements are not considered hearsay under Rule 801(d)(2)(E) and may be admitted if the court finds that (1) a conspiracy existed; (2) both declarant and the defendant against

---

[5]  The government points out that defendant does not direct the Court to any specific hearsay statements.  Indeed, neither party has obtained or cited the trial transcript in this case.

whom the declaration is offered were members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy.  See United States v. Eads, 191 F.3d 1206, 1210 (10th Cir. 1999), cert. denied, No. 99-6907, 2000 WL 743827 (U.S. June 12, 2000).  The party offering the evidence must establish these facts by a preponderance of the evidence.  Bourjaily v. United States, 483 U.S. 171, 176 (1987).  Such evidence may include the statements themselves, but the statements alone are insufficient to establish the existence of a conspiracy and that declarant and defendant were members of it.  Id.

As explained above, the government introduced evidence which showed the existence and nature of the alleged conspiracy, that Viera and defendant were parties to the conspiracy and that the statement was made in furtherance of the conspiracy.  See United States v. Owens, 70 F.3d 1118, 1123 (10th Cir. 1995).  The Court finds that Medina's testimony about Viera's statement was properly admitted.  The Court therefore overrules defendant's motion for a new trial.

**IT IS THEREFORE ORDERED** that the Motion For Judgment Of Acquittal, Or In The Alternative A New Trial (Doc. #105) which defendant Carlos Beltran-Aguilar filed May 18, 2009 be and hereby is **OVERRULED**.

Dated this 17th day of July, 2009 at Kansas City, Kansas.

s/Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge